## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| SAMUEL GRANT, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV423-033 |
| | ) | |
| MARTIN O'MALLEY,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Samuel Grant, Jr., seeks judicial review of the Social Security Administration's denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).

## I.    GOVERNING STANDARDS

In social security cases, courts

. . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation

---

[1] Martin O'Malley is now the Commissioner of Social Security and has been substituted for Acting Commissioner Kilolo Kijakazi as the defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. The Clerk is **DIRECTED** to update the docket accordingly.

and brackets omitted).  "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

*see also Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019)

("Substantial evidence . . . is 'more than a mere scintilla.'  [Cit.]  It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (citations omitted)).

Under the substantial evidence test, "findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004).

The burden of proving disability lies with the claimant.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1).  If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step.  *Id*. § 404.1520(a)(4).  At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  *Id*. § 404.1520(a)(4)(i).  At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is

> "severe." *Id.* § 404.1520(a)(4)(ii).  At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii).  If not, the ALJ must then determine at step four whether the claimant has the [residual functional capacity ("RFC")] to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv).  If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience.  An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnote added).

At steps four and five, the ALJ assesses the claimant's RFC and ability to return to her past relevant work.  *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004), *superseded by regulation on other grounds*, 20 C.F.R. § 404.1520c, *as stated in Jones v. Soc. Sec. Admin.*, 2022 WL 3448090, at *1 (11th Cir. Aug. 17, 2022).  RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a)); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012).  "The ALJ makes the RFC determination based on all relevant medical and other evidence presented.  In relevant part, the RFC determination is used to decide whether the claimant can

adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

## II.   BACKGROUND

Grant, born October 7, 1969, was 50 years old when he applied for DIB in March 2020, and 52 years old at the time of the ALJ's decision. Tr. 30, 228-237 (SSI application), 238-244 (DIB application).  He alleges a disability-onset date of February 26, 2020.  Tr. 19, 228, 238.  He has a high school education and previous work as a forklift operator and a jockey driver.  Tr. 271.  After a hearing, tr. 36-62 (Hearing Transcript), the ALJ issued an unfavorable decision, tr. 14-35.

The ALJ found that Grant's right shoulder osteoarthritis, dysfunction of major joint of the right knee, depression, and anxiety constituted severe impairments[2] but did not meet or medically equal a Listing.  Tr. 20-22.  The ALJ then found that Grant retained the RFC for light work except:

> he can lift 20 pounds occasionally and 10 pounds frequently and carry 20 pounds occasionally and 10 pounds frequently. He can sit for 6 hours, stand for 6 hours, and walk for 6 hours. He can push and/or pull as much as can lift and/or carry.  He can operate foot controls with right foot occasionally and

---

[2] The ALJ found Grant's drug abuse, amputation of fifth toes bilaterally, and seizures to be non-severe.  Tr. 20.

occasionally reach overhead and all other directions with the right upper extremity. He can climb ramps and stairs occasionally, but should never climb ladders, ropes, or scaffolds. He can frequently balance and occasionally stoop, kneel, crouch, and crawl. He should not work at unprotected heights or around hazardous machinery. He is limited to understanding, remembering, and carrying out simple one- or two-step instructions, performing simple, routine, repetitive tasks and making simple work-related decisions for two [h]our segments. He is limited to occasional interaction with supervisors, coworkers, and the public.

Tr. 22; *see also* tr. 22-28. Grant, he determined, was unable to perform his past relevant work, but could perform jobs that existed in significant numbers in the national economy. Tr. 28-30. Therefore, he was found to be not disabled. Tr. 30. The Appeals Council denied review. Tr. 1-6. Grant filed the instant lawsuit seeking judicial review of the ALJ's decision. *See* doc. 1.

## III. ANALYSIS

Grant's critique of the Commissioner's final decision focuses on the ALJ's consideration of test results from a consultative examiner (CE), Dr. Livingston. *See* doc. 12 at 4-5, 7-9. He argues the ALJ erred in "accepting" Dr. Livingston's testing of his right arm that "show[ed] 2/5 strength for both proximal and distal measurements (defined in the SSA form the doctor used as a limitation that the right arm suffered severe

weakness such that there was no movement against gravity), but not including this limitation in his RFC . . . ."  *Id.* at 4-5.  The Commissioner argues that "the evidence [Plaintiff] cites—a single 2/5 rating of his right arm on a graded strength test during a July 2021 consultative examination—does not undermine the substantial evidence supporting the ALJ's RFC finding."  Doc. 15 at 6.

The ALJ clearly considered Dr. Livingston's consultative exam when analyzing Plaintiff's RFC.  He first summarized Dr. Livingston's findings, including Plaintiff's subjective complaints during the exam, the doctor's clinical observations of Plaintiff during the exam, and various test results.  Tr. 25.  The ALJ specifically discussed the doctor's observation of Grant's "difficulty due to the right upper extremity impairment," testing that "showed the claimant had . . . significantly decreased range of motion on the right shoulder and forearm," and "[t]esting of the claimant's right upper extremity [that] showed 2/5 proximal and distal."  *Id.* (citing tr. 470-71, 475).

In explaining how he considered Dr. Livingston's consultative exam in formulating the RFC, the ALJ again summarized Livingston's findings and opinions.  Tr. 27-28.  The ALJ ultimately found the opinion partially

persuasive, and indicated that, "[d]ue to the claimant's inability to perform heavy lifting or prolonged exertional and nonexertional limitations, the [undersigned] found the claimant would be limited to work at light exertional level with the additional exertional and nonexertional limitations provided for in the above reference residual functional capacity assessment." Tr. 28.  In conducting this analysis, the ALJ again referenced the right upper arm testing that "showed 2/5 proximal and distal." Tr. 28.  It is this strength test result that forms the basis for Plaintiff's entire argument.  *See generally* docs. 12 & 16.  He argues the RFC should have included additional limitations because it "should include the right arm strength limitation of 'no movement against gravity.'" Doc. 12 at 9.

As a threshold matter, the parties dispute whether the at-issue strength test result is a "medical opinion" subject to the analysis required by 20 C.F.R. § 404.1520c and § 416.920c.  Grant argues it is, doc. 16 at 4-5, and the Commissioner argues it is not, doc. 15 at 19-20.  A "medical opinion" is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in . . . [y]our ability to

perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching) . . . ."  20 C.F.R. §§ 404.1513(a)(2)(i); 416.913(a)(2)(i)(A).  Evidence can also be "objective medical evidence," which is "medical signs, laboratory findings, or both," or "other medical evidence," which is "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(1), (3); 416.913(a)(1), (3).

If the strength test result is considered a medical opinion, the ALJ was required to determine its persuasiveness by focusing on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors.   20 C.F.R. §§ 404.1520c(c); 416.920c(c); *see also Matos v. Comm'r of Soc. Sec.*, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022).  "The ALJ may, but is not required to, explain how she considered factors other than supportability and consistency, which are the most important factors." *Id.* "Supportability relates to the

extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Cook v. Comm'r of Soc. Sec.*, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021).

The strength test results appear to fall into the category of "other medical evidence." *See* 20 C.F.R. §§ 404.1513(a)(3); 416.913(a)(3).   Dr. Livingston assigned Grant's right upper extremity a "graded strength" of 2/5 for both proximal and distal.  Tr. 475.  The form's scale indicates a "2" means the patient suffers severe weakness, or "no movement against gravity."  Tr. 475.  This is a statement, from the physician, "about the nature and severity of [Grant's] impairments."   20 C.F.R. §§ 404.1513(a)(3); 416.913(a)(3).  Therefore, the ALJ was not required to specifically determine the persuasiveness of the test result.  *See, e.g., Dye v. Comm'r of Soc. Sec.*, 2022 WL 970186, *4 (M.D. Fla. Mar. 31, 2022) (where physician's letter did not assess the extent to which claimant could perform any particular function in a work setting, it did not constitute a medical opinion, and the ALJ was not required to assess anything in the letter for its persuasiveness or offer any reason for not

finding its contents persuasive). Instead, faced with the strength test results, the ALJ was only required to consider them. *See* 20 C.F.R. §§ 404.1520(a)(3) ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled."); 416.920(a)(3) (same). Notably, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision enables the district court to conclude that the ALJ considered the claimant's medical condition as a whole." *Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531, 533 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)) (internal quotation marks and brackets omitted). Here, the ALJ obviously considered the strength test results. Tr. 25 (citing tr. 475); tr. 28 (citing tr. 475). That is sufficient.

Moreover, even if the test result were a medical opinion subject to the more rigorous analysis of 20 C.F.R. § 404.1520c and § 416.920c, Grant has not pointed out any deficiency in the ALJ's analysis. *See generally* doc. 12. Instead, he contends the ALJ "accepted" the test result but did not "mention . . . how that led to the RFC determination." Doc. 12 at 9; doc. 16 at 3-4. Grant is incorrect. The ALJ expressly acknowledged the

strength test results and included directly relevant exertional limitations in the RFC, additionally limiting Grant's right arm movements beyond the light exertional level with only occasional reaching.  Tr. 27-28.  This Court does not have to speculate how or why he did so, the ALJ spelled it out in his decision, explaining that his RFC assessment "accounts for the claimant's right shoulder osteoarthritis" by limiting him to light exertional work with "occasional overhead and directional reaching with the right upper extremity."  Tr. 26.

Even if Grant believes these limitations do not fully address the "severe weakness" finding for his right shoulder and arm, the ALJ was not then required to incorporate all of Livingston's findings directly into the RFC, as Grant suggests.  The Middle District of Georgia, applying the new regulations, rejected a similar argument and found that, so long as the ALJ explained whether the opinion was persuasive considering its supportability and consistency, the Court was "prohibited" from "invad[ing] the province of the Commissioner and reweigh[ing] the evidence. . . ." *KTB v. Comm'r of Soc. Sec.*, 2021 WL 5906372, at \*2 (M.D. Ga. Dec. 14, 2021).  As the Northern District of Ohio summarized, "[w]hile the ALJ must consider medical opinions and may find them

persuasive, she is not required to adopt them. . . .  The ALJ may choose to adopt some limitations suggested in the medical opinion and reject others.  [Cit.]  This is so even if the ALJ finds the opinion persuasive or accords it significant weight." *Green v. Comm'r of Soc. Sec.*, 2022 WL 610643, at *3 (N.D. Ohio March 2, 2022) (citations omitted).  Grant's argument does not require reversal.

Because the ALJ's RFC determination is supported by substantial evidence, Grant's arguments fail.

## IV.  CONCLUSION

For the reasons set forth above, the final decision of the Acting Commissioner is **AFFIRMED**.  The Clerk of Court is **DIRECTED** to **CLOSE** this case.

**SO ORDERED**, this 28th day of March, 2024.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA